RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE _____8_____8___/_07
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


**DONALD RAY THOMAS**          **CIVIL ACTION**
          **Appellant**          **NO. 06-1718**


**VERSUS**


**JO ANNE B. BARNHART**          **JUDGE DEE D. DRELL**
**COMMISSIONER OF SOCIAL SECURITY**   **MAGISTRATE JUDGE JAMES D. KIRK**
          **Appellee**


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Donald Ray Thomas ("Thomas") protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on or about March 22, 2005. (R. 41-43, 219-221). Thomas set forth a disability date of March 6, 2004 due to gout and obesity. (R. 41, 219). The claim was initially denied and Thomas timely filed a request for a hearing before a Federal Administrative Law Judge ("ALJ"). (R. 27).

Administrative Law Judge, Lawrence T. Ragona, held a hearing on March 24, 2006 and Thomas and his attorney, Rod Dues, attended. (R. 227). The ALJ issued a decision on May 25, 2006 denying benefits. (R. 12-19). Thomas filed a request for review of the ALJ's decision on June 19, 2006. (R. 8). The Appeals Council declined review, and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner"). (R. 4-

6).  Thereafter, Thomas filed the instant action seeking judicial review of the Commissioner's decision.

To qualify for SSI and/or DIB, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a).  Eligibility is dependent upon disability, income and other financial resources.  42 U.S.C. 1382(a).  To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

At the time of the administrative hearing, Stewart was 47 years old and lived with a female friend in Pineville, Louisiana. (R. 228-229).  Thomas completed the twelfth grade in regular classes. (R. 232)  He enrolled in the Army in 1977 where he served as a cook until 1980. (R. 233).  He then enlisted in the Army Reserve on a part time basis. (R. 232).  During that time, Thomas worked as a cook for Cabrini Hospital. (R. 242).  In approximately 1992, due to a restructuring of the Army, Thomas enrolled full time with the Louisiana National Guard at Camp Beauregard. (R. 232,

243).  He retired from the National Guard in approximately August of 2003.  (R. 233-234).  In the fourth quarter of 2004, he began working on a part time basis for 321 Main Street d/b/a Kelley Catering of Cenla ("321 Main") preparing food trays for the military as part of a catering service. (R. 55, 231).

Thomas testified his medical condition, gouty arthritis, prevented him from walking or standing when flare ups occurred. Accordingly, he was forced to stay home and was unable to work. (R. 247).  Thomas further testified that during a flare up, he could walk 100 yards before his feet would begin to burn and he would have to sit down. (R. 236).  He was only able to lift fifteen pounds or his joints would ache. (R. 237).  He did not perform household chores other than to assist in folding laundry. (R. 237).

In addition to his physical problems, Thomas testified he suffered from depression. (R. 241).  However, he did not begin taking psychiatric medication until March 17, 2006. (R. 241).  He advised that these medications prevented him from working because they made his dizzy and required him to rest.  However, Thomas had not discussed this problem with his doctors. (R. 244-245).

Thomas received treatment at both Huey P. Long Medical Center ("HPL") and the Veterans Administrative Medical Center (the "VA"). The medical records from HPL establish that Thomas was seen on several occasions for complaints of pain in his left foot and the diagnosis was gouty arthritis.  His doctor at HPL, Dr. Gurjeet

Kohli, advised via a physical residual functional capacity questionnaire that Thomas suffered from gouty arthritis for the past three years and experienced flares on a frequent basis. (R. 139-142).

Dr. Kohli advised that Thomas experienced swelling and inflammation which was extremely painful and an attack left Thomas incapacitated. Specifically, Dr. Kohli noted that the condition interfered with Thomas' attention and concentration, prevented him from sitting more than 45 minutes at one time, standing more than thirty minutes at a time, standing, walking or sitting any more than two hours in an eight hour day, rarely lift more than ten pounds, never twist, stoop, crouch, reach, handle or finger objects. Additionally, Dr. Kohli noted that Thomas would need a job which would allow him to shift positions at will from sitting to standing and/or walking, take frequent breaks of undetermined duration and allow Thomas to elevate his legs on an as needed basis.

The ALJ found Thomas had not engaged in substantial gainful activity at any time relevant to the decision; his impairments of gout and obesity were "severe"; however, these impairments either on their own or in combination did not meet or medically equal the listed impairments. The ALJ also found Thomas had the residual functional capacity to lift and carry up to twenty pounds occasionally and up to ten pounds frequently, stand, walk and sit

at least six hours in a workday, his ability to push and pull was limited only by the weight he was able to lift and carry and he could occasionally climb, balance, kneel, crouch, crawl and stoop. Finally, the ALJ determined that Thomas was able to perform his past relevant work as a food assembler as it did not require a work related activity precluded by his residual functional capacity. Therefore, Thomas was not considered disabled as defined by the Social Security Act. (R. 14-19).

### Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## ISSUES

Thomas raises the following issues for appellate review:

1. The ALJ erred in failing to accord proper weight to the opinion of Mr. Thomas' treating physician, resulting in an erroneous assessment of Mr. Thomas' residual functional capacity;

2. The ALJ erred in determining Mr. Thomas could perform his past work.

Residual Functional Capacity Assessment

In Myers v. Apfel, 238 F.3d 617, 621 (5th Cir. 2001), the Fifth

Circuit stated that it had long held that ordinarily the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments and responses should be accorded considerable weight in determining disability. However, the opinion of the treating physician is not conclusive and the ALJ must decide the claimant's status.  Accordingly, when good cause is shown, less weight, little weight or even no weight may be given to the treating physician's testimony.

The good cause exceptions recognized by the Fifth Circuit include disregarding statements that are brief, conclusory or not supported by medically acceptable clinical laboratory diagnostic techniques or otherwise unsupported by the evidence.  An ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistence of opinion with record, and specialization.  Myers, 238 F.3d at 621, citing Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000).

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting.  Residual functional capacity is a medical assessment based upon all of the relevant evidence of the work a claimant can perform despite his limitations. 20 C.F.R. §416.945.  Although that burden of proof in a disability case is on the claimant, that burden shifts to the

Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. Herron v. Bowen, 788 F.2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. See, Rivera-Figueroa v. Secretary of Health and Human Services, 858 F.2d 48, 51 (1st Cir. 1988); Soth v. Shalala, 827 F.Supp. 1415, 1417 (S.D. Iowa 1993); Santiago-Santiago v. Secretary of Health and Human Services, 756 F.Supp. 74 (D. Puerto Rico 1991). Also, Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

In the Hearing Decision, the ALJ noted that Dr. Kohli's opinion regarding Thomas' disability is not supported by the objective medical findings or other evidence in the record. He stated that neither Dr. Kohli nor Thomas could provide documentation supporting the claim Thomas experienced frequent gout attacks. In fact, Thomas acknowledged during his testimony that he could not recall the timing of the gout attack he experienced prior to March, 2006. (R. 235). It appears Dr. Kohli based his statement that Thomas experienced frequent flares upon Thomas' most recent medical history; that is, his visits from February 22, 2005 through May 2, 2005.[1] Prior to that time, Thomas was seen no more than

---

[1] During this time, Thomas was seen on February 22, March 18, March 22, April 19, April 22 and May 2, 2005.

four times during 2003 and 2004, and, he was seen only three more times in 2005 and once in 2006 for complaints related to gout. Accordingly, these alleged frequent flares occurred over the course of a few months, not several years.

The residual functional capacity questionnaire completed by Dr. Kohli on or about May 2, 2005 indicated that Thomas was disabled and could not work due to multiple restrictions with respect to standing, sitting, walking and stooping. (R. 139-142). However, at the time the questionnaire was completed, Thomas was and had been working on a part time basis for several months at 321 Main Street clocking ten to twenty hours per week.[2] (R. 55, 91-93). The ALJ  also noted and Thomas confirmed that the gout was well controlled when he took his medication.

Accordingly, the record contains substantial evidence which supports the ALJ's determination that Dr. Kohli's opinion was not supported by the medical findings and other evidence in the record. Further, because the ALJ properly concluded the opinion should be accorded very little weight, the ALJ's assessment of Thomas' residual functional capacity was not improper.

Past Relevant Work

Initially, the burden is on the claimant to demonstrate he cannot perform his previous work, that he is unable to engage in

---

[2]   While Thomas testified he worked an average of eight to ten hours a week, pay stubs reveal that he averaged ten to twenty hours a week. (R. 91-94).

substantial employment and that he meets the duration requirement. Chaparro v. Bowen, 815 F.2d 1008, 1010 (5th Cir. 1987).  It is only if the claimant proves that he is unable to engage in his past relevant work (Step 4) that the burden shifts to the Commissioner to show that the claimant is able to perform some other type of substantial work in the economy (Step 5).  Greenspan v. Shalala, 38 F.3d 232 (5th Cir. 1994); Scott v. Heckler, 770 F.2d 482, 484 (5th Cir. 1985).

While an ALJ has a duty to make a sufficient inquiry into a claim, it is an applicant's burden to prove an inability to perform prior work.  Villa v. Sullivan, 895 F.2d 1019 (5th Cir. 1990). Moreover, the mere inability of a claimant to perform certain requirements of a his past work does not mean that he is unable to perform past relevant work as that phrase is used in the regulations.  The Commissioner may consider the description of the claimant's past work as such work as is generally performed in the national economy.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).  See also, Social Security Ruling 82-61.

The ALJ found Thomas could perform his past relevant work; therefore, he concluded Thomas did not carry his burden of proving he could not return to such work.  In order to determine that Thomas could perform his past work, the ALJ directly compared Thomas' remaining functional capacities with the actual physical and mental demands of his previous work.

-10-

Thomas contends that the physical and mental demands set forth in his Disability and Work History Reports, such as preparing food, unloading trucks, serving food, standing six hours and lifting and carrying food and steam table trays weighing fifty to one hundred pounds, exceeded the residual functional capacity assessment set forth by the ALJ.[3] (R. 73-74, 82-88). Reliance upon these reports is flawed.

The information provided by Thomas in the Disability and Work History Reports was with respect to full time work performed from 1976 through 2004, not the past relevant work which Thomas performed on a part time basis from the last quarter of 2004 through at least October of 2005. Additionally, Thomas listed the work he performed from 1976 through 2004 under the generic heading of "food service" rather than setting forth each job he held, the dates he worked there and the specific requirements of each job.

Additionally, Thomas' main reason for not being able to return to work in the food service industry was his inability to stand. However, he acknowledged during the hearing that this was not an issue with respect to work performed at 321 Main because he could sit while preparing airplane meals.

Accordingly, substantial evidence supports the ALJ's

---

[3] Any claims that the limitations set forth by Dr. Kohli indicated Thomas could not return to his past relevant work are without merit as the ALJ properly determined such opinion should be given "very little weight".

-11-

conclusion that Thomas did not carry his burden of proof at step four of the sequential process, and his residual functional capacity did not exceed the physical or mental requirements of his past relevant work.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Thomas' appeal be DENIED and that the final decision of the Commissioner be AFFIRMED.

### Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____

day of August, 2007.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

-13-